UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE FILIP
MAGISTRATE JUDGE DENLOW
05CR 445

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. |
| v. ) | Violations: Title 18, |
| ) | United States Code, |
| ALAN WAIDELICH ) | Sections 2 and 1341 |
| DAVID OHLSON ) | |

FILED
MAY 18 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### COUNT ONE

The SPECIAL MARCH 2004 GRAND JURY charges:

1. At times material herein:

   a. Defendant ALAN WAIDELICH ("WAIDELICH") worked as a claims adjuster at Sedgwick Claims Management Services, Inc. ("Sedgwick").

   b. Sedgwick had offices located in Chicago, Illinois, and in other states. Sedgwick was a third-party administrator that handled insurance claims for a number of large companies, including workers' compensation claims.

   c. Defendant WAIDELICH's duties at Sedgwick primarily involved processing workers' compensation claims for certain client-companies. This included paying medical bills, attorneys' fees, expenses, causing settlement checks to be issued, and scheduling medical examinations for claimants. Defendant WAIDELICH had limited authority to hire outside contractors to perform work for Sedgwick relating to processing client-companies' workers' compensation claims. As a claims adjuster, defendant WAIDELICH owed Sedgwick a fiduciary duty to provide honest services to

1

Sedgwick.

d. Defendant DAVID OHLSON ("OHLSON") was the sole proprietor of the Braemar Group, Ltd. ("Braemar"). Defendant OHLSON operated Braemar out of his home, and was the only one at Braemar that worked on Sedgwick matters.

e. Braemar was located in Plainfield, Illinois. Braemar acted as a broker for medical case management companies, and provided nurses, doctors and others to handle case management, review records, and perform medical evaluations.

f. Sedgwick required certain individuals, who had filed workers' compensation claims, to have an independent medical evaluation, which was a physical examination performed by a doctor.

g. Defendant OHLSON, who was hired as an outside contractor by defendant WAIDELICH, scheduled independent medical evaluations--physical examinations--with doctors for some of Sedgwick's workers' compensation claimants.

h. Sedgwick had an in-house group that reviewed and audited hospital bills for certain workers' compensation claimants, in order to determine whether the bills were accurate.

i. Sedgwick also hired a person referred to herein as Individual One to perform "Alive and Well checks" relating to certain workers' compensation claimants. These involved meeting with disabled claimants, in person, to determine that the claimants were still alive, and that Sedgwick had accurate current

information concerning the claimant's address and other relevant information.

2. Beginning in or about early 1999, and continuing through in or about March 2001, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ALAN WAIDELICH and
DAVID OHLSON,

defendants herein, devised and intended to devise, and participated in, a scheme to defraud and to obtain money and property from Sedgwick by means of materially false and fraudulent pretenses, representations and promises, and by means of material omissions, and to deprive Sedgwick of its right to receive honest services from its employees and agents, which scheme is further described below.

3. It was part of the scheme that defendants WAIDELICH and OHLSON made and caused others to make false representations and material omissions to Sedgwick in order to cause Sedgwick to issue checks to defendant OHLSON's company. Defendants WAIDELICH and OHLSON falsely represented that defendant OHLSON had provided services that included scheduling physical examinations for workers' compensation claimants, and audits of claimants' hospital bills, when, in fact, defendant OHLSON had not provided those services. Defendants WAIDELICH and OHLSON split the proceeds of the fraudulently obtained checks. The resulting loss totaled at least $275,000.

4. It was further part of the scheme that defendant WAIDELICH also made and caused others to make false representations and material omissions to Sedgwick in order to cause Sedgwick to issue checks to other individuals for Alive and Well checks that were not rendered or were inadequate. Defendant Waidelich received a portion of those proceeds from the fraudulently obtained checks for his own benefit. The resulting loss totaled approximately $125,000.

### Braemar

5. It was further part of the scheme that from early 1999 through approximately March 2001, defendant WAIDELICH referred cases to defendant OHLSON, to have independent medical evaluations scheduled. In early 1999, defendants WAIDELICH and OHLSON agreed that Sedgwick would pay OHLSON's company $400 for each medical evaluation that was done, and in exchange, defendant OHLSON would pay defendant WAIDELICH a $50 kickback for each case. Shortly after this began, the defendants agreed that the kickback would be $100 for each case. Defendant OHLSON paid defendant WAIDELICH kickbacks in cash at the end of each month, based on the number of cases referred. The defendants did not tell Sedgwick about their kickback agreement.

6. It was further part of the scheme that defendant WAIDELICH made false entries in computer records maintained by Sedgwick and in various claimants' files in order to conceal the fraudulent

nature of the payments made to defendant OHLSON.

7. It was further part of the scheme that in or about late 1999, defendant WAIDELICH gave defendant OHLSON a check issued by Sedgwick, made payable to Braemar, in the amount of approximately $9000. Although the defendants each knew that no services had been provided in exchange for that check, defendant OHLSON negotiated the check, and the defendants split the proceeds.

8. It was further part of the scheme that there were other occasions when defendant WAIDELICH used Sedgwick's funds to pay defendant OHLSON, even though defendant OHLSON and his company had provided no services to Sedgwick. On some occasions, defendant WAIDELICH sent defendant OHLSON an envelope containing a Sedgwick check made payable to Braemar, along with an invoice from a doctor for an independent medical evaluation that the doctor had performed. The check from Sedgwick included payment for the doctor, and a fee for scheduling the examination. Defendant OHLSON kept the fee, even though he had not scheduled the examination and had not done any work in exchange for the fee. Defendant OHLSON also paid defendant WAIDELICH a kickback of $100 for each file.

9. It was further part of the scheme that defendants WAIDELICH and OHLSON caused Sedgwick to issue checks to Braemar based on falsely inflated invoices. Defendants WAIDELICH and OHLSON split the excess payments from Sedgwick.

10. It was further part of the scheme that defendants WAIDELICH and OHLSON also caused Sedgwick to issue checks made payable to Braemar by falsely representing, and causing to be represented, to Sedgwick that those checks were related to hospital audits that were being performed. In fact, defendants WAIDELICH and OHLSON knew that no services would be rendered, or were rendered, in exchange for that money. Defendant OHLSON negotiated the checks which were made payable to Braemar, and then gave a portion of that money to defendant WAIDELICH. The defendants arranged to have Sedgwick checks issued to Braemar in order to conceal from Sedgwick the fact that their employee, defendant WAIDELICH, was getting funds from Sedgwick. Defendants WAIDELICH and OHLSON fraudulently obtained approximately $275,000 through checks issued to Braemar by Sedgwick.

### Individual One

11. It was further part of the scheme that in early 1999, defendant WAIDELICH and Individual One agreed that Individual One would pay defendant WAIDELICH a kickback of $100 for each case that defendant WAIDELICH sent to Individual One to have an Alive and Well check performed. Individual One paid defendant WAIDELICH kickbacks based on the number of cases referred, and split additional proceeds with defendant WAIDELICH. Defendant WAIDELICH and Individual One did not tell Sedgwick about their kickback agreement.

12. It was further part of the scheme that defendant WAIDELICH and Individual One caused reports for Alive and Well checks to be submitted to Sedgwick, knowing that those reports did not meet Sedgwick's requirements relating to Alive and Well checks. They also knew that the Alive and Well checks were not being performed in an appropriate manner, in that there were no face-to-face interviews with the claimants being performed as required by Sedgwick.

13. It was further part of the scheme that defendant WAIDELICH made false entries in Sedgwick's computer records and files to justify the payments to Individual One. Those false entries included the false representation that payment was being issued for the provision of medical services to a claimant, even though no such medical services were rendered.

### Defendants WAIDELICH and OHLSON

14. It was further part of the scheme that defendants WAIDELICH and OHLSON did misrepresent, conceal, hide, and cause to be misrepresented, concealed and hidden, the purposes of and acts done in furtherance of this fraud scheme.

15. It was further part of the scheme that defendants WAIDELICH and OHLSON executed and attempted to execute the scheme described above by causing various things, including correspondence, invoices, and funds, to be transmitted through the mail and by interstate wire.

16. On or about January 12, 2001, at Chicago, in the Northern District of Illinois, Eastern Division,

ALAN WAIDELICH and
DAVID OHLSON,

defendants herein, for the purpose of executing the above described scheme, and attempting to do so, did knowingly cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, according to the directions thereon, an envelope containing a check made payable to the Braemar Group, Ltd., in the amount of approximately $48,826, that defendants WAIDELICH and OHLSON had caused Sedgwick to issue, relating to claimant RR, which included payment for certain services which were not provided, which envelope was addressed to defendant OHLSON, in Plainfield, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.


8

## COUNT TWO

The SPECIAL MARCH 2004 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference paragraphs 1 through 15 of Count One of this Indictment as though fully set forth herein.

2. On or about June 20, 2000, at Chicago, in the Northern District of Illinois, Eastern Division,

ALAN WAIDELICH,

defendant herein, for the purpose of executing the above described scheme, and attempting to do so, did knowingly cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, according to the directions thereon, an envelope containing a check made payable to the Braemar Group, Ltd., in the amount of approximately $15,778, that defendant WAIDELICH had caused Sedgwick to issue, relating to claimant RR, which included payment for certain services which were not provided, which envelope was addressed to the Braemar Group, Ltd., in Plainfield, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT THREE

The SPECIAL MARCH 2004 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference paragraphs 1 through 15 of Count One of this Indictment as though fully set forth herein.

2. On or about July 6, 2000, at Chicago, in the Northern District of Illinois, Eastern Division,

ALAN WAIDELICH,

defendant herein, for the purpose of executing the above described scheme, and attempting to do so, did knowingly cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, according to the directions thereon, an envelope containing a check made payable to the Braemar Group, Ltd., in the amount of approximately $34,971, that defendant WAIDELICH had caused Sedgwick to issue, relating to claimant RR, which included payment for certain services which were not provided, which envelope was addressed to the Braemar Group, Ltd., in Plainfield, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FOUR

The SPECIAL MARCH 2004 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference paragraphs 1 through 15 of Count One of this Indictment as though fully set forth herein.

2. On or about August 4, 2000, at Chicago, in the Northern District of Illinois, Eastern Division,

ALAN WAIDELICH,

defendant herein, for the purpose of executing the above described scheme, and attempting to do so, did knowingly cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, according to the directions thereon, an envelope containing a check made payable to the Braemar Group, Ltd., in the amount of approximately $8,326, that defendant WAIDELICH had caused Sedgwick to issue, relating to claimant JR, which included payment for certain services which were not provided, which envelope was addressed to the Braemar Group, Ltd., in Plainfield, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FIVE

The SPECIAL MARCH 2004 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference paragraphs 1 through 15 of Count One of this Indictment as though fully set forth herein.

2. On or about September 1, 2000, at Chicago, in the Northern District of Illinois, Eastern Division,

ALAN WAIDELICH,

defendant herein, for the purpose of executing the above described scheme, and attempting to do so, did knowingly cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, according to the directions thereon, an envelope containing a check made payable to the Braemar Group, Ltd., in the amount of approximately $16,871, that defendant WAIDELICH had caused Sedgwick to issue, relating to claimant RR, which included payment for certain services which were not provided, which envelope was addressed to the Braemar Group, Ltd., in Plainfield, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.

### COUNT SIX

The SPECIAL MARCH 2004 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference paragraphs 1 through 15 of Count One of this Indictment as though fully set forth herein.

2. On or about October 16, 2000, at Chicago, in the Northern District of Illinois, Eastern Division,

ALAN WAIDELICH,

defendant herein, for the purpose of executing the above described scheme, and attempting to do so, did knowingly cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, according to the directions thereon, an envelope containing a check made payable to the Braemar Group, Ltd., in the amount of approximately $26,852, that defendant WAIDELICH had caused Sedgwick to issue, relating to claimant LN, which included payment for certain services which were not provided, which envelope was addressed to the Braemar Group, Ltd., in Plainfield, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.

**COUNT SEVEN**

The SPECIAL MARCH 2004 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference paragraphs 1 through 15 of Count One of this Indictment as though fully set forth herein.

2. On or about October 19, 2000, at Chicago, in the Northern District of Illinois, Eastern Division,

ALAN WAIDELICH,

defendant herein, for the purpose of executing the above described scheme, and attempting to do so, did knowingly cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, according to the directions thereon, an envelope containing a check made payable to the Braemar Group, Ltd., in the amount of approximately $4,783, that defendant WAIDELICH had caused Sedgwick to issue, relating to claimant JR, which included payment for certain services which were

not provided, which envelope was addressed to the Braemar Group, Ltd., in Plainfield, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

No.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

UNITED STATES OF AMERICA

vs.

ALAN WAIDELICH
DAVID OHLSON

INDICTMENT

Violations: 18 United States Code, Sections 2 and 1341

*A true bill,*

_____
Foreman

Filed in open court this ___ day of _____, A.D. 2005

**MICHAEL W. DOBBINS**

by _____, Deputy Clerk
Clerk

Bail, $ _____

90 880.320